IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Albert W. Hart, former # 170997, a/k/a Albert Williams Hoyte, a/k/a Albert William Hoyte, <br><br> Plaintiff, <br><br> vs. <br><br> Sheriff James Lee Foster, Major D. Gilliam, Captain Shane Kitchen, Sheriff Ricky W. Chastain, Major Chris Hudson, and Captain Paul Mode, <br><br> Defendants. | C/A No.: 1:08-3981-JFA-SVH <br><br><br> REPORT AND RECOMMENDATION |

Plaintiff, who is proceeding *pro se* in this action, alleges he has been subjected to various unconstitutional conditions of confinement. Before the court are the following motions: (1) Defendants Foster, Gilliam, and Kitchen's Motion for Summary Judgment [Entry #57]; and (2) Defendants Chastain, Hudson, and Mode's Motion for Summary Judgment [Entry #74].

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff, a former pretrial detainee held at the Newberry County Detention Center ("NCDC"), filed his complaint on December 10, 2008, against Defendants Defendants

Foster, Gilliam, and Kitchen ("NCDC Defendants") complaining of his transfer from R.E. Johnson Detention Center ("JDC") to NCDC and the conditions of his confinement at NCDC. On June 3, 2009, Plaintiff filed an amended complaint [Entry #42], adding new claims and adding Defendants Chastain, Hudson, and Mode ("JDC Defendants").

Plaintiff first claims that the NCDC Defendants and the JDC Defendants conspired to transfer him from R.E. Johnson Detention Center to NCDC. (Compl. 3). Plaintiff also complains that NCDC Defendants have deprived him of access to legal materials in violation of due process of law. Specifically, Plaintiff alleges his rights have been violated because he lacks "legal supplies, certified mail access, indigent legal phone calls, paper, pen, access to legal websites like westlaw.com by computer, etcetera." (Compl. 6).

Plaintiff claims that his classification in maximum security at NCDC subjected him to cruel and unusual punishment, as he was deprived of television and games and had to wear restraints when outside of his cell. (Compl. 4). Plaintiff further alleges he was subjected to cruel and unusual punishment because he awoke to ants biting him in his bed. Plaintiff states that he has a phobia of dying from ant bites or an ant allergy and has had a psychiatric evaluation as a result of the alleged ant infestation. (*Id.*)

Plaintiff's amended complaint makes additional miscellaneous claims including: (1) that his "XXL" magazine was censored for containing explicit material; (2) that there are puddles of water on his cell floor; (3) that his cell is cold; (4) that bad odors of human feces waft from the toilet of a nearby cell; and (5) that NCDC failed to provide a 2,000 calorie per day diet. (Am. Compl. 3-7). Plaintiff also alleges he was not receiving his medicine for

hypertension. (Am. Compl. 4). Plaintiff also complains he was denied access to a grievance procedure because, after Plaintiff filed 31 inmate grievances in his first 58 days at NCDC, Defendant Kitchen informed Plaintiff that he would no longer receive responses to grievances without a relevant, justifiable, and legitimate reason to respond.

The NCDC Defendants filed their motion for summary judgment on September 15, 2009 [Entry #57], and the JDC Defendants filed their motion for summary judgment on January 8, 2010 [Entry #74]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' Motions. [Entries #58, 80]. Plaintiff filed a response in opposition to the NCDC Defendants' motion [Entry #64] and the JDC Defendants' motion [Entry #84]. Having carefully considered the parties' submissions and the record in this case, the court recommends granting the Defendants' motions for summary judgment.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the

court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322-323.

III. Analysis

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th

Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill v. Nicodemus,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted, "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243-44 (1983) and *Hill v. Nicodemus*, 979 F.2d at 991-92). Therefore, the standards applied in Eighth Amendment conditions of confinement and deliberate indifference to medical needs cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)).

### A. Claim of Denial of Access to the Courts

Plaintiff alleges denial of access to the courts, based on the alleged lack of access to legal books, legal phone calls, pens, and computer access to westlaw.com. Defendant Kitchen's response to Plaintiff's request indicates that Plaintiff had access to a phone, postal services, and indigent supplies through the canteen, which Plaintiff did not dispute. *See* Kitchen's Grievance Response [Entry #1-1]. In addition, while Plaintiff alleges he was allowed only two direct legal phone calls in an 89-day period, Plaintiff admits that he had access to a phone that made collect calls in his cell, but alleges that it did not work for a week. [Entry #84 at 29–30] However, Plaintiff admits the phone was repaired after he placed a request. (*Id.*)

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation concerning his conviction or prison conditions. *Lewis v. Casey*, 518 U.S. 343, 350-53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723-24 (4th Cir. 1989).

A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518

U.S. at 353-54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353-55.

Further, the Fourth Circuit has ruled that the United States Constitution does not require every local jail to even have a law library. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Barr v. Williamsburg County*, 2007 WL 666793, at *3 (D.S.C. 2007) (holding "county jails and county detention centers are not required to have law libraries."). "[T]he brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Magee*, 810 F.2d at 452. Finally, representation by counsel negates a prisoner's claim of inadequate access to the courts. *Hause v. Vaught*, 993 F.2d 1079 (4th Cir. 1993).

In this case, Plaintiff does not allege any specific facts as to how a pending legal case, or any other legal matter, has been adversely affected due to his denial of access to legal materials, and, therefore, Plaintiff has failed to state a cognizable claim.

  B.  Conditions of Confinement

Plaintiff's miscellaneous claims of unconstitutional conditions of confinement including: (1) that his "XXL" magazine was censored for containing explicit material; (2) that there are puddles of water on his cell floor; (3) that his cell is cold; (4) that bad odors of human feces waft from the toilet of a nearby cell; and (5) that NCDC failed to provide a 2,000 calorie per day diet. (Am. Compl. 3-7).

To properly assert a claim under 42 U.S.C. § 1983, Plaintiff must show: (1) that he

was injured; (2) by the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws; (3) by a person acting under color of state law. *See* 42 U.S.C. § 1983. Plaintiff does not allege any physical injuries as a result of these complaints. With regard to the odors in the toilet of nearby cell, Defendants note that the condition was remedied upon Plaintiff notifying Defendants of the matter. *See* Inmate Request Form [Entry #57-3]. Defendants also assert that Plaintiff and all other detainees receive a sufficient diet and Plaintiff has failed to put forth any evidence, beyond conclusory allegations, contradicting Defendants.

Plaintiff's unsupported allegations are insufficient to state a viable § 1983 claim. These conditions, while uncomfortable for Plaintiff, simply do not rise to the level of a constitutional violation. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."); *Lasure v. Doby*, C/A No. No. 0:06-cv-1527, 2007 WL 1377694, *5 (D.S.C. 2007) (noting that plaintiff was "being held in a county jail facility, not a hotel"). Therefore, Defendants are entitled to summary judgment on these claims.

Plaintiff also alleges that a "swarm of ants" entered his cell through the ceiling and air ducts and bit him, causing him to suffer from "vivid and recurring dreams of being bitten to death by ants or dying from an allergic reaction to the ant bites." Plaintiff included with his complaint a memorandum from Captain Kitchen to Plaintiff in response to Plaintiff's complaints of ants. [Entry #1-1 at 7]. In this memorandum, Captain Kitchen acknowledges Plaintiff's complaint and explains the Defendants' efforts to remedy the problem. In

particular, Captain Kitchen stated the administration was taking measures in reference to the ant problem and that officers had sprayed the ants and relocated inmates so as not to subject those inmates to an ant infestation.

Plaintiff's amended complaint again alleges an "ant infestation." Plaintiff further claims that Captain Kitchen purposefully placed Plaintiff in a cell with ants "intentionally to aggravate Plaintiff's known phobia and fear of death by ant bites or allergic reaction to ant bites." However, Defendants submit an incident report indicating that a corrections officer, while in Plaintiff's cell to spray for ants, found a mound of peanut butter Plaintiff had apparently smeared on the wall of his cell. [Entry #57-4 at 2].

Viewing the facts in the light most favorable to Plaintiff, Plaintiff has failed to state a cause of action related to the ant infestation and ant bites. The record indicates that once Defendants had knowledge of the ant infestation or any bites of Plaintiff, Defendants acted to move him to an alternative cell and sprayed for ants in the cell(s) he occupied. Plaintiff does not allege that his ant bites were not treated and even admits that he recieved a mental evaluation when he claimed he had nightmares and a phobia related to the ants. Plaintiff also sets forth only conclusory allegations and no evidence in support of his allegation that Defendant Kitchen purposely placed Plaintiff in a cell without ants. Therefore, Plaintiff has not set forth a viable cause of action related to the ant infestation.

C. Grievance Responses

The law is well-settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–138 (1977). Even

if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1944) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"). Accordingly, Plaintiff has failed to state a § 1983 claim based on the alleged failure of the NCDC to respond to his grievances.

    D.    Transfer to and Classification at NCDC

Plaintiff's complains that he was transferred to NCDC and was classified in maximum security once there. Plaintiff claims that as a result he has suffered a loss of certain privileges, such as the availability of a television to watch or everyday recreation. This general and conclusory allegation again fails to provide any evidence of a constitutional violation. Plaintiff has no constitutional right to placement in any particular custody classification. *Neal v. Shimoda*, 131 F.3d 818, 828 (9th Cir. 1997) ("[A] prisoner does not have a constitutional right to be housed at a particular institution, ..., [or] to receive a particular security classification ...."); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) ("[A] prison inmate does not have a protectable liberty or property interest in his custodial classification and an inmate's disagreement with a classification is insufficient to establish a constitutional violation."). *See Alexander v. Frank*, No. 91-35587, 1992 WL 149679 at * 1 (9th Cir. June 30, 1992) (Pretrial detainee not denied due process, equal protection, or subjected to cruel and unusual punishment when he was placed in maximum security/maximum custody due to specific factors based on a legitimate government purpose

of ensuring the safety and security of the prison facility.).

Here, Defendant Kitchen's affidavit states: "Plaintiff frequently caused disturbances in the general population of the detention center, sometimes necessitating that Plaintiff be placed in a different unit and isolated from the general population. Plaintiff was placed in isolation, not as a form of punishment, but to prevent further disruptions in the general population." Kitchen Aff. at 4 [Entry #57-2]. This court can take judicial notice that such restrictions typically include inmates being required to wear restraining devices when out of their cells, being kept in bare rooms to lessen the possibility of contraband and "acting out" behavior, and other types of similar restrictions. *See generally, Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 859 (4th Cir.1975) (en banc) (describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation). Plaintiff's classification and restrictions here are related to a legitimate government purpose of ensuring the safety and security of the prison facility. Therefore, Plaintiff has not presented any evidence to overcome summary judgment.

E. Deliberate Indifference to Medical Needs

In "Plaintiff's Statement of Disputed Facts," he claims he was denied hypertension medicine "for 2 or 3 days upon Plaintiff's arrival at NCDC." [Entry #84 at 27]. Plaintiff claims this constitutes deliberate indifference to medical needs. *Id.* Defendants admit that Plaintiff was without medication upon his arrival, but that he saw a doctor shortly thereafter who prescribed medication which Plaintiff received as directed. Kitchen Aff. ¶ 6.

The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," *Id.* (quoting *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 103-105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case

of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986). Further, negligence is not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams*, 474 U.S. 327, 328-36 & n. 3 (1986); *Davidson v. Cannon*, 474 U.S. 344, 345-48 (1986); *Ruefly v. Landon*, 825 F.2d 792, 793-94 (4th Cir.1987); *see also Pink v. Lester*, 52 F.3d 73, 78 (4th Cir. 1995) (applying *Daniels* and *Ruefly*: "The district court properly held that *Daniels* bars an action under § 1983 for negligent conduct.").

Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *see also Brooks v. Celeste*, F. 3d 125 (6th Cir. 1994) ("Although several courts prior to the Supreme Court's decision in *Farmer v. Brennan*, *supra*, held that 'repeated acts of negligence could by themselves constitute deliberate indifference, *Farmer* teaches otherwise."); *Sellers v. Henman*, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows negligence but not deliberate

indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); *White v. Napoleon*, 897 F.2d 103, 108-109 (3rd Cir. 1990); *Smart v. Villar*, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution requires that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice. *Jackson v. Fair*, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. *See Smart v. Villar*, 547 F. 2d 112 (10th Cir. 1976); *Lamb v. Maschner*, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. *Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

Most pertinent to the case at hand, any claims of medical indifference as to defendants should be dismissed as they are not medical personnel and plaintiff has not shown that they interfered with his medical care. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper

course of treatment. *Id.*

Under these principles, Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants, who are non-medical personnel. In addition, viewed in the light most favorable to Plaintiff, deprivation of hypertension medicine for "2 to 3 days," with no alleged injury does not state a claim of deliberate indifference to medical needs. For the above stated reasons, summary judgment should be granted in favor of Defendants on this issue.

F. Respondeat Superior

Defendants Foster and Gilliam contend that Plaintiff failed to make any actual allegations against them and they cannot be held liable on a theory of *respondeat superior* or vicarious liability. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits, such that an employer or supervisor is not liable for the acts of his employees, absent an official policy or custom which results in illegal action. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Fisher v. Washington Metro. Area Transit Authority*, 690 F.2d 1133, 1142–43 (4th Cir. 1982). Higher officials may be held liable for the acts of their subordinates, however, if the official is aware of a pervasive, unreasonable risk of harm from a specified source and fails to take corrective action as a result of deliberate indifference or tacit authorization. *Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984), *cert. denied*, *Reed v. Slakan*, 470 U.S. 1035 (1985).

Plaintiff has not alleged that Defendants Foster and Gilliam were personally responsible for any of the incidents or acted in any way other than a supervisory role.

Further, Plaintiff has not shown that Defendants Foster and Gilliam were deliberately indifferent to, or tacitly authorized, any of the actions or inactions of their subordinates. Thus, Plaintiff fails to show that Defendants Foster and Gilliam are liable on a theory of *respondeat superior* or supervisory liability, and the claims against these Defendants must be dismissed.

G. Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the

court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively

reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

E. Claims regarding violations of S.C. Code § 17-13-120

Plaintiff claims that his transfer from JDC to NCDC violated S.C. Code § 17-13-120. Having found that Defendants are entitled to summary judgment regarding Plaintiff's constitutional claims, the court should decline to exercise supplemental jurisdiction over any claims for relief pursuant to state law. *See* 28 U.S.C. § 1367(c).

IV. Conclusion

For the reasons discussed above, it is recommended that Defendants Foster, Gilliam, and Kitchen's Motion for Summary Judgment [Entry #57] and Defendants Chastain, Hudson, and Mode's Motion for Summary Judgment [Entry #74] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 26, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**